## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MONICA P. WAYS** | § | |
| 111 Harries Street, Loft 406 | § | |
| Dayton, Ohio 45402 | § | **CIVIL ACTION NO.** 1:12-cv-450 |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **MIAMI UNIVERSITY** | § | **USDJ:** Bertelsman |
| 501 East High Street | § | |
| Oxford, Ohio 45056 | § | **USMJ:** _____ |
| | § | |
| **the Defendants.** | § | ***Jury Trial Demand Made*** |

## ORIGINAL COMPLAINT WITH JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, MONICA P. WAYS (hereinafter "Plaintiff"), and files this, her Original Complaint against MIAMI UNIVERSITY ("Defendant") and in furtherance thereof, would respectfully show unto this Court as follows:

### I.

### PARTIES

1.  Plaintiff, MONICA P. WAYS ("Plaintiff" or "Ways") is an adult resident citizen of Ohio.

2.  Defendant, MIAMI UNIVERSITY in an institution of higher learning located at 501 East High Street, Oxford, Ohio 45056 and may be served through its President, Dr. David C. Hodge at that same address. Defendant has more than 15 employees

and is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42U.S.C.§2000e.

## II.

## JURISDICTION and VENUE

3.    This suit is brought under Federal Question Jurisdiction, 28 USC §1331, and over all other causes of action under the supplemental jurisdiction of this Court authorized by 28 USC §1367(a).

4.    The Court has venue over this matter because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this district, the unlawful employment practices alleged in this case occurred in this district, and there are employment records relevant to the claims maintained and administered by Defendant in this district.  28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

5.    All conditions precedent to jurisdiction have occurred or have been met.

6.    Charges of employment discrimination on the basis of race, color, gender discrimination and retaliation were filed as dual charges with the Ohio Civil Rights Commission and with the Equal Employment Opportunity Commission (the "EEOC") within 300 days of the commission of the unlawful employment practices alleged in this complaint.

7.    Two EEOC notifications of right to sue were mailed - one on March 13, 2012 received on March 15, 2012 and another mailed on April 10, 2012 and received shortly thereafter.

8.    This Complaint has been filed within 90 days of the receipt of the EEOC's notification of right to sue.

9.    The Plaintiff, having exhausted all administrative remedies, now files her lawsuit.

10. This lawsuit against the Defendant is filed on the basis of violations of Title VII.

### III.

### GENERAL FACTS

11. Defendant has over 500 employees as that term is defined in applicable State and Federal Laws.

12. At all pertinent times Plaintiff was and is an African-American, Black, Female. She was employed by the Defendant July 1, 2006.

13. On May 19, 2010, Plaintiff, then as Director of the Office of Community Engagement and Service ("CES") made a recommendation to her supervisor, Dr. Mark Shanley, Assistant Vice President for Student Affairs and Plaintiff's immediate supervisor to and with the Defendant's Office of Equity and Equal Opportunity (hereinafter OEEO); to waive the university's search procedures and promote Ms. Hailee Gibbons, a well qualified employee within CES, to the vacant position of Assistant Director of CES. The waiver requires the approval of OEEO to assure such actions are for good and valid nondiscriminatory reasons. In fact Dr. Barbara Jones, Vice President for Student Affairs, waived the search procedures to appoint Dr. Mark Shanley himself (a white male), from outside of the university, as Interim Assistant Vice President.

14. However, this recommendation and request from the Complainant, being a Black Female, was rejected on May 20, 2010 by Dr. Shanley.

15. Immediately thereafter, on May 25, 2010, May 26, 2010 and again on June 1, 2010, anonymous complaints were filed against Plaintiff by use of the Defendant's ethics point system alleging that Plaintiff had violated the university's hiring procedures for the

aforementioned Assistant Director position for seeking to promote Gibbons in Plaintiff's own office.

16.    On June 7, 2010, a similar anonymous complaint was filed, adding an additional allegation that Plaintiff hired the boyfriend of Gibbons as Community Partnership Coordinator in CES (a one year temporary position).

17.    Ordinarily, baseless complaints such as the above were summarily dismissed. However, the Defendant pursued these complaints based upon Plaintiff's race, color and gender and her support of the most qualified person for the position without regard for race, color or gender.

18.    After months of investigation, on November 1, 2010, Dr. Barbara Jones, Vice President for Student Affairs, emailed Plaintiff a copy of the investigative report and its findings; the report was dated September 30, 2010. The report was fraught with erroneous conclusions and findings and appeared to be nothing more than an attempt by the Defendant to discipline and tarnish Plaintiff for acting appropriately; again, the waiver from policy was requested by Plaintiff as to the promotion of Gibbons as is per Defendant policy and custom.

19.    The report was replete with attempts to add language that did not exist in the Miami University Policy and Information Manual's (hereinafter referred to as MUPIM) Section 13.2 Search and Appointment Procedures-Unclassified Administrative Staff in order to support faulty findings. Nevertheless, after months of turmoil, hearings and the like, dragging Plaintiff's reputation through the mud and keeping her from attending to her regular duties as being under a shroud of distrust, the report as to all material findings

was finally dismissed. Only one violation was found by the grievance hearing committee - the deviation from hiring procedures - the same deviation for which Plaintiff had sought permission from superiors. Plaintiff was therefore found by the Defendant to have violated policy for seeking a deviation from that policy to promote a qualified employee. However, the University's Human Resource Department failed to include and withheld human resource documentation, in their possession, in their investigative report, that would have proven Plaintiff did not violate this section of the policy as well. What is even more egregious is the fact that Dr. Barbara Jones actively participated in and approved Plaintiff's recommendation in question. In response to this finding, Plaintiff submitted the human resource documentation excluded from their report and written communication between her and Human Resource personnel as proof of no violation of the university policy in questions. Even with written documentation of no violation, Defendant has ignored Plaintiff's submission of evidence. This discipline was without legitimate, non-discriminatory basis and effects Plaintiff's employability, promotability and taints her reputation.

20. Independent of the above, on March 17, 2011, Gibbons filed her own grievance specifying that Dr. Scott Walter and Dr. Barbara Jones violated MUPIM Section 13.6.E.3 that states, "It is a violation of University policy to retaliate against any individual who files or participates in the grievance process. If retaliation occurs, disciplinary action may be taken, up to and including dismissal." Gibbons' written grievance, in accordance with MUPIM Section 13.6 specifies her testimony at Plaintiff's aforementioned grievance hearing under MUPIM 13.6.E. and the adverse action taken against Gibbons by Dr.

Walter with the approval of Dr. Jones shortly thereafter; and, the causal relationship between her protected act (testimony at the hearing) and the adverse action taken against her by Dr. Walter, with the approval of Dr. Jones.

21.   However, as her immediate supervisor and in accord with Defendant's own policies and procedures requiring complaints to be made to the employee's supervisor, Plaintiff received the grievance from Gibbons. Plaintiff, in accordance with MUPIM 13.6.A received and responded to Gibbons' grievance as her "immediate supervisor". On March 22, 2011, Plaintiff was reprimanded by President Hodge, for her "unacceptable behavior" in responding to Gibbons' written grievance. In addition, President Hodge instructed that his written reprimanded be placed in Plaintiff's personnel file. Again, this additional discipline was without legitimate, non-discriminatory basis and effects Plaintiff's employability, promotability and taints her reputation.

22.   Dr. Jones has a history of discouraging, marginalizing, and making the work environment difficult for women of color. For example, Dr. Jones has been the subject of numerous prior complaints of discriminatory animus towards African-American Black Females. Wanda Carter (White Female), Special Counsel to the Ohio Attorney General has stated with reference to Dr. Jones, that **"women of color were more likely to express frustration and concern with Dr. Jones' leadership...".** It was the position of the Ohio Attorney General that Black women were more frustrated and concerned with Dr. Jones. This is an acknowledgement that a reasonable person would be concerned about the racial animus and motives for Dr. Jones's actions.

23.    Further, it was shortly after the above complaint was made by a "woman of color" that Dr. Jones began taking particular action against and interest in the Plaintiff and other "women of color".

24.    Specifically, (other than the Plaintiff) women of color who have been treated differently by the university include Dr. Susan Mosley Howard, Ms. Linda Dixon, and Ms. April Robles. Ms. Linda Dixon has been removed from her leadership position on a university-wide committee by Dr. Jones; Ms. Robles has been demoted from a Director to an Assistant Director position by Dr. Jones and transferred to an office in which she has no direct work experience. Upon information and belief, Dr. Howard has been forced to file her own discrimination complaint.

25.    Further, Defendant has an obligation to apply its established written policies and procedures equally, fairly, and without prejudice to all of its employees. Ms. Kerry Dabbs' report attempted to alter established written policy and procedures under MUPIM, Section 13.2 by stating in her report that "I find that proper university hiring procedures were not followed in keeping with Miami University Policy and Information Manual 13.2 B. *Specifically, [emphasis added]* Ms. Ways did not obtain approval from her supervisor(s) to waive the search for the Assistant Director of Community Engagement and Service. Ms. Ways offered to Ms. Hailee Gibbons a conditional job offer by stating more than her intent to recommend her for the position, without the authority to do so. Although changing minimum qualifications is not a policy violation, in the investigator's opinion, this was poor judgment." This finding, adopted by Defendant, is egregiously in error of MUPIM Section 13.2 and a reckless disregard for

the truth based upon the university's desire to ram through a finding of ethics violations to damage the reputation of a Black Female employee, and for that reason only. There is no language under Section 13.2 of MUPIM, *to include all of its subsections*, which requires a person in the chain of the hiring procedures to obtain the approval of their supervisor(s) before recommending a waiver of the search procedures, *despite the fact that the Plaintiff did so request.* Again, on May 20, 2010, in consultation with OEEO, Plaintiff Complainant had sought the approval of her supervisor, Dr. Shanley to waive the search procedures to promote Ms. Gibbons, as set out above. The report of the Defendant treats a White female differently and more favorably, as it completely ignores the fact that Dr. Barbara Jones (White Female) posted the vacant position in question using the exact same minimum qualifications the report states was "poor judgment" on the part of the Plaintiff.

26.    Dr. Jones, as Vice President, had the authority of the university to reject such erroneous findings based on her knowledge of the truth. Dr. Jones chose not to do so.

27.    The Defendant's investigation, pursuit of findings, findings and failure to disregard all findings in favor of the Plaintiff was a clear effort to discriminate and retaliate against the Plaintiff and to damage the reputation and future employability and advancement of the Plaintiff.

28.    The forced participation in the grievance process, as well the damage to the Plaintiff throughout and following created an intimidating, offensive, hostile working environment.    Defendant has an affirmative obligation to assure that its use of institutional procedures is applied without prejudice and without creating an intimidating,

offensive, hostile working environment. It has an affirmative obligation to fairly and impartially weigh the facts of a situation before implementing its university procedures that, by the test of a reasonable person, can cause emotional distress and harm to the reputation of an employee.

29. Plaintiff has been discriminated against and retaliated against in violation of Title VII and 42 USC §1981.

## IV.

## CAUSES OF ACTION

### Count 1 - Retaliation

30. Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of this Complaint the same as though specifically set out herein again.

31. This action arises under Title VII.

32. Plaintiff engaged in protected activity when she both professionally and personally opposed the Defendant's actions and supported herself and Gibbons as above. Plaintiff was retaliated against to put illegal chilling and retaliatory pressure on Plaintiff.

33. This suit is brought seeking legal and equitable remedies.

34. Defendant at all times relevant hereto had actual and constructive knowledge of the conduct described herein and it was a motivating factor for the actions taken.

35. Defendant is liable for the conduct of its employees, officers, agents, representatives and superiors due to the doctrine of *respondeat superior*.

36. Not only did Defendant not try to stop this illegal activity, but by and through their employees, officers and supervisors, agents and representatives, aided and abetted it by

inciting and encouraging additional illegal activity - discrimination and retaliation - against their victim.

37. Plaintiff alleges that, in addition to the practices enumerated above Defendant has engaged in other illegal actions against her which are not yet fully known. At such time as said discriminatory practices become known to her, she will amend this pleading, and reserves her right to do so.

38. As a direct and proximate result of Defendant's willful, knowing and intentional retaliation, Plaintiff has suffered mental anguish and emotional distress; and has suffered and will continue to suffer a loss of past and future earnings, and other employment benefits and job opportunities and is thereby entitled to general and compensatory damages.

## Count 2 - Disparate Treatment

39. Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of this Complaint the same as though specifically set out herein again.

40. This action arises under Title VII.

41. Plaintiff was discriminated against because of her gender, (female), her race (African-American) and color (Black).

42. This suit is brought seeking legal and equitable remedies.

43. Defendant at all times relevant hereto had actual and constructive knowledge of the conduct described herein and it was a motivating factor for the actions taken.

44. Defendant is liable for the conduct of its employees, officers, agents, representatives and superiors due to the doctrine of *respondeat superior*.

45. Not only did Defendant not try to stop this illegal activity, but by and through their employees, officers and supervisors, agents and representatives, aided and abetted it by inciting and encouraging additional illegal activity - discrimination and retaliation - against their victim.

46. Plaintiff alleges that, in addition to the practices enumerated above Defendant has engaged in other illegal actions against her which are not yet fully known. At such time as said discriminatory practices become known to her, she will amend this pleading, and reserves her right to do so.

47. As a direct and proximate result of Defendant's willful, knowing and intentional retaliation, Plaintiff has suffered mental anguish and emotional distress; and has suffered and will continue to suffer a loss of past and future earnings, and other employment benefits and job opportunities and is thereby entitled to general and compensatory damages.

## **Count 3 - Disparate Impact**

48. Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of this Complaint the same as though specifically set out herein again.

49. This action arises under Title VII.

50. Plaintiff was discriminated against because of her gender, (female), her race (African-American) and color (Black). The policies and procedures as well as grievance procedure appears non-discriminatory on its face. However in their application, the result is discrimination.

51. This suit is brought seeking legal and equitable remedies.

52. Defendant at all times relevant hereto had actual and constructive knowledge of the conduct described herein and it was a motivating factor for the actions taken.

53. Defendant is liable for the conduct of its employees, officers, agents, representatives and superiors due to the doctrine of *respondeat superior*.

54. Not only did Defendant not try to stop this illegal activity, but by and through their employees, officers and supervisors, agents and representatives, aided and abetted it by inciting and encouraging additional illegal activity - discrimination and retaliation - against their victim.

55. Plaintiff alleges that, in addition to the practices enumerated above Defendant has engaged in other illegal actions against her which are not yet fully known. At such time as said discriminatory practices become known to her, she will amend this pleading, and reserves her right to do so.

56. As a direct and proximate result of Defendant's willful, knowing and intentional retaliation, Plaintiff has suffered mental anguish and emotional distress; and has suffered and will continue to suffer a loss of past and future earnings, and other employment benefits and job opportunities and is thereby entitled to general and compensatory damages.

## V.

## ATTORNEYS' FEES, COSTS AND EXPENSES

57. As a further direct and proximate result of Defendant's violations of law, as heretofore described, the Plaintiff has been compelled to retain the services of counsel in an effort to protect her rights, and has thereby incurred, and will continue to incur, legal fees and

costs, the full nature and extent of which are presently unknown to the Plaintiff. The Plaintiff requests that attorneys' fees, costs and expenses (including but not limited to expert witness fees) be awarded pursuant to all applicable laws.

### VI.

### JURY TRIAL REQUESTED

58.    Plaintiff requests a jury in this case.

### VII.

### AD DAMNUM

59.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon notice and hearing that judgment be entered in her favor and against Defendant, for general and compensatory damages; exemplary and punitive damages; liquidated damages, pre-judgment and post-judgment interest as allowed by law; attorneys' fees; costs; and expenses. Plaintiff further requests all equitable relief allowed under law, including injunctive relief should that be sought. Should further actions of the Defendant require additional equitable/injunctive relief, the plaintiff hereby prays for that relief.

Respectfully submitted:

/S/Marc D. Mezibov
Marc D. Mezibov - (OH No. 0019316)
THE LAW OFFICE OF MARC MEZIBOV
401 East Court Street, Suite 600
Cincinnati, Ohio 45202
(513) 621-8800
Fax (513) 621-8833
mmezibov@mezibov.com

**Subject to *Pro Hac Vice*:**

Charles H. Peckham - cpeckham@peckhampllc.com
Federal Bar No: 15770
Texas Bar No: 15704900
PECKHAM, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044 – phone
(713) 493-2255 – facsimile
**Subject to *Pro Hac Vice*:**

Willie E. Gary
Sekou Gary
GARY, WILLIAMS, FINNEY, LEWIS, WATSON & SPERANDO, PL
Waterside Professional Building
221 East Oceola Street
Stuart, Florida 34994
(800) 329-4279
FAX: (772) 463-4319