**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Monica P. Ways** | : | Case No. 1:12-cv-00450-WOB |
| | : | |
|     **Plaintiff,** | : | |
| | : | **MEMORANDUM IN SUPPORT OF** |
| vs | : | **DEFENDANT MIAMI UNIVERSITY'S** |
| | : | **MOTION TO DISMISS** |
| **Miami University** | : | |
| | : | |
|     **Defendant.** | : | |

Based on the allegations contained in Plaintiff's Complaint, together with the governing law, Plaintiff Monica Ways ("Ways" or "Plaintiff"), is not entitled to relief on any of the claims alleged in her Complaint against Miami University ("Defendant" or "Miami") and, as such, Defendant submits that Plaintiff's Complaint be dismissed with prejudice.

### I.    Introduction

Plaintiff seeks relief against Defendant under a number of claims. Specifically, Plaintiff alleges that Defendant is liable for discrimination (disparate treatment and disparate impact) because of her race (African American), color (Black), and gender (female), and that Defendant retaliated against her for engaging in protected conduct. All of Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). (*See* Cmplt. ¶¶31, 40 and 49).

Plaintiff's claims, however, fail because Plaintiff has failed to plead any actionable claims against Defendant upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and in line with the pleading standards set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) for the following reasons.

First, while Plaintiff may be unhappy that she was the focus of an investigation, was found to have violated Defendant's hiring policies, and issued a written reprimand by the University President for behavior he deemed "unacceptable," none of these actions rise to the level of an adverse employment action actionable under Title VII. (*See* Cmplt. ¶21). This is fatal to Plaintiff's disparate treatment and retaliation claims.

Second, Plaintiff's retaliation claim also fails because Plaintiff's vague allegation that she both "professional and personally opposed the Defendant's actions and supported herself" and another employee lacks the requisite factual detail to describe protected conduct under Title VII. (*See* Cmplt. ¶31).

Lastly, Plaintiff's disparate impact fails because Plaintiff fails to identify a specific policy or procedure that when neutrally applied, negatively impacts a protected class. Instead, Plaintiff attempts to somehow link Defendant's investigation into her hiring practices to events affecting three other women of color, none of which appear to have any relation to each other except that Plaintiff claims that Dr. Barbara Jones was involved in all of them, to argue that women of color have been negatively impacted by Defendant's policies. (Cmplt. ¶50).

Indeed, the bulk of Plaintiff's allegations are legal conclusions or mere recitations of the elements of legal claims, which without more, are entitled to no weight at the motion to dismiss stage. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. 662. For the reasons contained herein, none of Plaintiff's causes of action set forth a viable claim against Defendant and Plaintiff's suit against Defendant should be dismissed with prejudice.

## II. Statement of Facts[1]

Plaintiff began working for Defendant in 2006 as Director of the Office of Community Engagement and Service ("CES"), and she continues to be employed by Defendant in this capacity. (Cmplt. ¶12).

### A. Defendant Investigates Numerous Anonymous Complaints Regarding Plaintiff's Hiring Practices.

According to Plaintiff, her claims against Defendant started in May 2010 when she asked her supervisor and the Office of Equity and Equal Opportunity ("OEEO") to waive Defendant's employment search procedures so she could promote Hailee Gibbons to Assistant Director of CES. (Cmplt. ¶13). Plaintiff's supervisor denied her request, but Ms. Gibbons was eventually hired into the position anyway. (Cmplt. ¶14).

Immediately thereafter, Defendant received two separate anonymous complaints, which were filed through its EthicsPoint complaint system, claiming that Plaintiff violated Defendant's hiring procedures. (Cmplt. ¶15). A few weeks later, Defendant received another anonymous complaint alleging that Plaintiff again violated Defendant's hiring procedures, this time with respect to hiring Ms. Gibbons' boyfriend as Community Partnership Coordinator in CES. (Cmplt. ¶16).

Defendant investigated the anonymous complaints against Plaintiff. (Cmplt. ¶17). After the initial investigation, Defendant accepted the investigator's findings, which Plaintiff claims were "fraught with erroneous conclusions and findings and appeared to be ... an attempt by the [Defendant] to discipline and tarnish Plaintiff for acting appropriately". (Cmplt. ¶18). Plaintiff

---

[1] All of the facts presented in this Memorandum in Support are taken from Plaintiff's Complaint. Although Defendant reserves its right to deny any of the factual allegations contained in Plaintiff's Complaint, for purposes of Defendant's Motion to Dismiss only, all of her factual allegations are accepted as true.

3

now claims that Defendant's decision to investigate the numerous complaints against her was based on her race, color and gender. (Cmplt. ¶17).

Plaintiff challenged the investigator's initial findings through Defendant's grievance procedures, but the grievance committee also determined that Plaintiff violated Defendant's hiring procedures. (Cmplt. ¶19).

After the grievance committee's findings, Plaintiff submitted additional documentation to Defendant's Human Resource Department, which she claims "would have proven [that she] did not violate" the Defendant's hiring policies. (*Id.*). Plaintiff further alleges the Defendant ignored her late submission of evidence and "*[t]his discipline*" (though it is unclear how this constitutes discipline), "was without legitimate, non-discriminatory basis and effects [sic] Plaintiff's employability, promotability and taints her reputation." (*Id.*) (emphasis supplied).

Plaintiff now complains Defendant's "investigation, pursuit of findings, findings and failure to disregard all findings" in her favor "was a clear effort to discrimination and retaliate against" her to "damage her reputation and future employability and advancement ...". (Cmplt. ¶27).

**B.   President Hodge Issues a Written Reprimand to be Placed in Plaintiff's Personnel File for Her "Unacceptable Behavior" in Responding to a Grievance.**

On March 17, 2011, Ms. Gibbons, who was one of the employees whom Plaintiff was accused of attempting to hire in violation of Defendant's hiring procedures, filed an internal complaint alleging she was retaliated against for participating in Defendant's investigation into Plaintiff's hiring practices. (Cmplt. ¶20). Even though the underlying facts of Ms. Gibbons' complaint directly concerned Plaintiff, Plaintiff responded to Ms. Gibbons' complaint. (Cmplt. ¶21). In turn, President Hodge reprimanded Plaintiff for "unacceptable behavior" and had a written reprimand placed in Plaintiff's personnel file. (*Id.*). Plaintiff alleges "this *additional*

4

*discipline* was without legitimate, non-discriminatory basis and effects [sic] Plaintiff's employability, promotability and taints her reputation. (*Id.*) (emphasis added).

C. **Plaintiff's Complaints Regarding Dr. Barbara Jones**.

Plaintiff's Complaint takes special issue with Dr. Jones, who Plaintiff claims "has a history of discouraging, marginalizing, and making the work environment difficult for woman of color." (Cmplt. ¶22). Plaintiff claims that after a complaint was made against Ms. Jones (though Plaintiff fails to identify a particular complaint and/or who lodged it), "Dr. Jones began taking particular action against and interest in the Plaintiff and other 'women of color'". (Cmplt. ¶23). It is unclear what "particular action against" or "interest in the Plaintiff and other 'women of color'" Plaintiff is referring, though Plaintiff goes on to allege that one woman of color was removed from a leadership position by Dr. Jones, that another was demoted and transferred by Dr. Jones, and that another may have filed a complaint against Dr. Jones. (Cmplt. ¶¶23-24). However, none of these other women's issues with Dr. Jones are at issue here.

### III. Legal Analysis

A. **Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). "If as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed[.]" *Neitzke v. Williams,* 490 U.S. 319, 327, S.Ct. 1827, 104 L.Ed.2d 338 (1989) (quotation omitted). Dismissal under Fed. R. Civ. P. 12(b)(6) streamlines litigation by "dispensing with needless discovery and factfinding" on claims that are legally untenable in the first place. *Neitzke,* 490 U.S. at 326-27.

5

In *Twombly* and *Iqbal,* the United States Supreme Court clarified the pleading requirements for a plaintiff's complaint under Rule 12(b)(6) and held "a plaintiff's obligation to provide the 'grounds' of his 'entile[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not due." *Twombly*, 550 U.S. at 575 (alteration in original); *Iqbal*, 556 U.S. 662.  A complaint "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 677).  While this "does not 'require detailed factual allegations,' ... it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 555).  This raises the bar from where *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) had left it:  Whereas under *Conley* a court was to dismiss a facially well-pleaded complaint only if its contents were so outlandish as to be utterly incapable of proof, *Iqba*l (along with its predecessor, *Twombly*), advises a court to toss out a case *unless* the allegations meet *some minimum standard of plausibility*. *Courie*, 577 U.S. at 629-30.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court emphasized there must be sufficient factual allegations in the complaint "to raise a right to relief above the speculative level," and "[t]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of act, on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 555-56 (internal quotes omitted).  Thus, while a court must take the complaint's factual allegations as true in making this assessment, it need not accept the truth of legal conclusions or draw

6

unwarranted factual inferences. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

Here, in structuring her Complaint, Plaintiff relies largely on "'naked assertion[s]' devoid of 'further factual enhancement,'" which *Twombly* and *Iqbal* prohibit, that, even when construed in a light favorable to the Plaintiff, still fail to set forth a viable claim against Defendant. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.     Plaintiff's Failure to Allege She Suffered an Adverse Employment Action is Fatal to Her Disparate Treatment and Retaliation Claims.**

Title VII makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, ... or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, ... , sex, or national origin." 42 U.S.C. §2000e-1(a).

Thus, to set forth a claim for disparate treatment and retaliation under Title VII, Plaintiff *must* show she suffered an adverse employment action. *See Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004); *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 736 (6th Cir. 2006).

Plaintiff's Complaint does not state factual allegations plausibly showing she suffered an adverse employment action. Plaintiff's so-called adverse employment actions center on two events: (1) her claim that Defendant made her the subject of and forced her to participate in its investigation into the numerous anonymous complaints it received into Plaintiff's hiring practices, which it ultimately concluded that Plaintiff violated; and (2) President Hodge issuing and placing a written reprimand in Plaintiff's personnel file.

7

The problem for Plaintiff is that none of the "discipline[s]," as Plaintiff deems them, constitutes an actionable adverse employment action in the Title VII context. An adverse employment action is "a materially adverse change in the terms and conditions of a plaintiff's employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 362 F.3d 789, 795 (6th Cir. 2004) (en banc)). The Sixth Circuit has recognized several examples of events that constitute a "significant change in employment status," which include: "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *White v. Baxter HealthCare Corp.,* 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Burlington Industries v. Ellerth,* 524 U.S. 742, 761,118 S.Ct. 2257, 141 L. Ed. 2d 633 (1998)).

The law is well settled that a "mere inconvenience or an alteration of job responsibilities" or a "bruised ego," however, do *not* constitute adverse employment actions. *White,* 364 F.3d at 797 (citing *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir. 2002). As the Sixth Circuit explained:

> A materially adverse change in the terms and conditions of employment ***must be more disruptive than a mere inconvenience*** or ***an alteration of job responsibilities***. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities ....

*Ford v. General Motors Corp.,* 305 F.3d 545, 553 (6th Cir. 2002) (emphasis supplied).

As such, "*de minimis* employment actions," like the ones Plaintiff complains of, are not materially adverse and, thus, not actionable. *Bowman,* 220 F.3d at 462.

**1. Being the Subject of an Internal Investigation is Not an Actionable Adverse Employment Action Under Title VII.**

Plaintiff was the subject of an internal investigation after Defendant received numerous anonymous complaints about Plaintiff's hiring practices. As for the investigation itself, Plaintiff complains that the investigator's report was "fraught with erroneous conclusions and findings that appeared to be nothing more than an attempt by the Defendant to tarnish Plaintiff," (Cmplt. ¶18); that the investigation dragged her "reputation through the mud" and "kept her from attending to her regular duties as being under a shroud of distrust" (Cmplt. ¶19); that Defendant ignored Plaintiff's after-submitted evidence that Plaintiff claims "would have proven [that she] did not violate" Defendant's hiring policies (*Id.*); and that Plaintiff's failure to disregard all findings in her favor. (Cmplt. ¶27). While Plaintiff deems these events "discipline," this is self-proclaimed.

The Sixth Circuit is clear on this issue, and the fact Plaintiff was the subject of an investigation into possible employee misconduct is *not* an adverse action under the law. *See Dendinger v. Ohio*, 207 Fed. Appx. 521, 527 (6th Cir. 2006) ("We have repeatedly held ... neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action"); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) ("a suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action") (quoting *White*, 364 F.3d at 803); *Kuhn v. Washtenaw County,* No. 10-11191, 2012 WL 1229890, at *7 (E.D. Mich. Apr. 12, 2012) ("being the subject of an investigation based on false allegations may, at best, be uncomfortable and even cause mental anguish but [plaintiff's] claim for disparate treatment may not rest on it ..."); *Arnold v. City of Columbus*, No. 2:08-cv-0031, 2011 WL 1303593, at *13 (S.D.Ohio Mar. 31, 2011)

9

(plaintiff's allegations that she was "singled out and falsely accused quite publicly of criminal behavior," subject to "investigations based on clear falsehoods and bare allegations, picked up by the press," and subjected to "increased (unwarranted) scrutiny" did not constitute an adverse employment action).

Therefore, even after construing Plaintiff's allegations in a light favorably to her, none of the complained-of events regarding Defendant's investigation into Plaintiff's hiring practices goes beyond the type of *de minimis* employment actions that, while inconvenient and may have led Plaintiff to have a bruised ego, rise to actionable adverse employment actions under the law.

> **2.    Receiving a Written Reprimand is not an Actionable Adverse Employment Action Under Title VII.**

Similarly, neither does fact that President Hodge issued Plaintiff a written reprimand for her "unacceptable behavior" and had it placed in Plaintiff's personnel file. As the Sixth Circuit reasoned:

> If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse employment action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure.

*Weigold v. ABC Alliance Co.,* 105 Fed. Appx. 702 (6th Cir. 2004) (finding a reprimand does not constitute adverse employment action); *Covert v. Monroe County Dept's of Job & Family Services,* No. 2:08cv744, 2010 WL 2346550, at *8 (S.D. Ohio June 8, 2010) (same); *Linton v. Kentucky Justice and Public Safety Cabinet,* No. 09-095 (WOB-CJS), 2011 WL 3319999, at *4 (E.D.Ky. Aug. 1, 2011) (same).

In *Eckerman v. Tennessee Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010), the Sixth Circuit found that a demotion constituted an adverse employment action, but noted "the other incidents of misconduct alleged," ***including a written reprimand***, do not rise "to the level of a

compensable constitutional tort ...". *See also, Jones v. Butler Metro. Hous. Auth.,* 40 Fed. Appx. 131, 137 (6th Cir. 2002) ("Unless the letter [of reprimand is] accompanied some other action, such as a demotion or salary reduction, it is not an adverse employment action.") (citations omitted).[2]

Plaintiff does not allege she was fired, bypassed for promotion, reassigned, and/or subjected to a decision that caused her a significant change in benefits because of the written reprimand. To the contrary, Plaintiff is still employed with Defendant and in the same capacity she has been employed since 2006. As such, the self-proclaimed "discipline" does not rise to the level of an actionable adverse employment action in the Title VII context, and Plaintiff's retaliation and disparate treatment claims fail to state a claim upon which relief can be granted.

C. **Plaintiff's Failure to Allege that She Engaged in a Protected Activity Under Title VII is Fatal to Her Retaliation Claim.**

Plaintiff's retaliation claim also fails because the Complaint does not allege Plaintiff engaged in any protected conduct under Title VII.

Title VII prohibits an employer from retaliating against an employee who has opposed discriminatory conduct─the opposition clause─or filed "a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]" ─the participation clause. 42 U.S.C. § 2000e–3(a). Consequently, a claim for retaliation under Title VII *requires* Plaintiff engage in an activity protected by the statute. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). This means the underlying complaint on which the opposition or participation is based *must* be framed as relating to race, ethnicity, gender, national

---

[2] In *Goldfaden v. Wyeth Laboratories*, No. 10-1799, 2012 WL 1676664 (6th Cir. May 15, 2012), the Sixth Circuit issued a non-published decision touching this issue and concluded that a warning letter issued to an employee constituted an "adverse action" even though the employee quit her job before she could suffer any consequences from the warning. This case is factually distinguishable because the warning letter the plaintiff received in that case limited her year-end performance evaluation to a three on a scale of one to five that could have resulted in her receiving a lower bonus.

origin, religion or any one of the protected classes covered under Title VII. Complaints that do not and that, for example, concern something an employee perceives as unfair, harsh, and/or condescending treatment by others, which have nothing to do with a protected class, do not qualify for protected status for an actionable retaliation claim.  *See Lockett v. Marsh USA, Inc.,* 354 Fed. Appx. 985, 997 (6th Cir. 2009); *Fox v. Eagle Distrib. Co.,* 510 F.3d 587, 591 (6th Cir. 2007) ("a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice") (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)); *Manstra v. Norfolk Southern Corp.* No. 3:10–CV–166, 2012 WL 1059950, at *11 (E.D.Tenn. Mar. 28, 2012); *Philip v. Wrigley Mfg. Co., LLC,* No. 1;09–CV–144, 2010 U.S. Dist. LEXIS 112747, at *33 (E.D.Tenn. Oct. 22, 2010) (noting "[c]omplaints about the way a business is being run, or even 'complaints concerning unfair treatment in general' are insufficient to constitute protected activity if they do not "specifically address discrimination") (quoting *Weaver v. Ohio State Univ.*, 71 F.Supp.2d 789, 793–94 (S.D.Ohio. 1998)).

Plaintiff claims she engaged in protected activity in two ways.  First, she claims "shortly" after Dr. Jones was the "subject of numerous complaints of discriminatory animus toward African-American Black Females ... Dr. Jones began taking particular action against and interest in the Plaintiff ...".  (Cmplt. ¶¶22-23).  This is where Plaintiff's allegation stops, and Plaintiff does not go on to allege *she complained* about Dr. Jones' alleged discriminatory animus pursuant to the opposition clause or that *she participated in any way* with respect to someone else's complaint charging Dr. Jones with discriminatory animus pursuant to the participation clause. As such, Plaintiff fails to allege how Dr. Jones has anything to do with her opposing or

12

participating in activity protected under Title VII, let alone how it forms the basis for her retaliation claim.

Second, Plaintiff claims she "engaged in protected activity when she both professionally and personally opposed Defendant's actions and supported herself and Gibbons." (Cmplt. ¶32). Again, this is where Plaintiff's claim stops and, without more, it is unclear what unlawful employment practice Plaintiff allegedly *opposed* to qualify for protection under Title VII.

In order to constitute "protected conduct" under Title VII's opposition clause, Plaintiff must indicate she made an "overt stand against suspected illegal discriminatory action," which is covered under Title VII. *Lockett,* 354 Fed. Appx. at 997 (6th Cir. 2009) (finding a report filed by an employee did not constitute protected activity when it "did not take an overt stand against suspected illegal discriminatory action; it did not even mention the term discrimination; it did not suggest the need for an investigation into discriminatory practices, and there is no evidence that [recipients of the report] understood [it] to be charging discrimination") (citation omitted).

To the contrary, Plaintiff alleges, at most, that she responded to Ms. Gibbons' internal complaint and was issued a written reprimand as a result. Plaintiff does not allege Ms. Gibbons' complaint was protected under Title VII, *i.e.,* there is no allegation that Ms. Gibbons' complaint was based on race, gender, ethnicity, or any other protected class and, on these allegations alone, Ms. Gibbons' complaint itself does not qualify for Title VII protection and, similarly, neither does Plaintiff's conduct in responding to it.

In conclusion, Plaintiff has not sufficiently pled that she engaged in any protected conduct under Title VII and her retaliation claim fails for this additional reason.[3]

---

[3] Plaintiff alleges that "Defendant's investigation, pursuit of findings, findings and failure to disregard all findings in favor the Plaintiff was a clear effort to ... retaliate against the Plaintiff," (Cmplt. ¶27) but Plaintiff fails to allege, as an initial matter, that Defendant's investigation followed and/or was the result of any protected conduct by Plaintiff and, therefore, Defendant will not address this allegation further.

13

**D.     Plaintiff's Failure to Identify a Specific Employment Practice is Fatal to Her Disparate Impact Claim.**

For her disparate impact claim, Plaintiff alleges generally that, Defendant's "policies and procedures as well as grievance procedure appears [sic] non-discriminatory on its [sic] face. However in their application, the result is discrimination." (Cmplt. ¶50).

To adequately plead a claim for disparate impact, Plaintiff must identify a *specific employment practice* that is facially neutral, but causes a disparate impact on a protected group in application. *See* U.S.C. § 2000e-2(k)(1)(A)(i); *Dunlap v. Tenn. Valley Auth.,* 519 F.3d 626, 629 (6th Cir. 2008). As the Supreme Court has explained, a plaintiff is "responsible for isolating and identifying the specific employment practices that are allegedly responsible" for the alleged disparities. *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *see also Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. –––, 131 S.Ct. 2541, 2555–56, 180 L.Ed.2d 374 (2011). The burden of identifying a specific-practice requirement is extremely important and is not a trivial one, yet it is one Plaintiff has failed to do. *Meacham v. Knolls*, 554 U.S. 84, 128 S.Ct. 2395, 2406, 171 L.Ed.2d 283; *Smith v. City of Jackson*, 544 U.S. 228, 241, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005).

Instead, Plaintiff claims "women of color," of whom she identifies three, were "treated differently" because one was allegedly demoted by Dr. Jones, one was allegedly transferred by Dr. Jones, and one may have filed a claim against Dr. Jones. (Cmplt. ¶24). This is not a class action whereby Plaintiff purports to represent the claims of similarly-situated employees and, even if it were, Plaintiff's allegations legal conclusion and threadbare recitals of elements are far too general to identify a specific policy or practice that has caused a disparate impact on women of color as required. Conversely, all Plaintiff has done is identify three women of color who, in addition to herself, have issues with Dr. Jones' leadership. This is not the type of specific policy

14

or practice that a Title VII claim for disparate impact is designed to provide a remedy, and Plaintiff's attempt to somehow link these ladies' experiences with Dr. Jones to Defendant's investigation into Plaintiff's hiring practices is unavailing. As such, Plaintiff has failed to sufficiently plead a claim for disparate impact and her claim should be dismissed with prejudice.

### IV. Conclusion

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted,

s/ Fred Pressley
Fred Pressley (0023090)
Sara H. Jodka (0076289)
Lisa Whittaker (0082142)
Porter, Wright, Morris & Arthur, LLP
41 South High Street – Suite 3100
Columbus, OH 43215
614/227-2060
614/227-2100 (Fax)
fpressley@porterwright.com
sjodka@porterwright.com
lwhittaker@porterwright.com

*Attorneys for Defendant Miami University*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 13th day of August, 2012, I filed the foregoing electronically through the Court's ECF system pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 5.2(b) and a copy is available to all registered users, including the following:

Marc D. Mezibov, Esq.
The Law Office of Marc Mezibov
401 East Court Street, Suite 600
Cincinnati, OH 45202

Charles H. Peckham, Esq.
Peckham, PLLC
Two Bering Park
800 Dering Drive, Suite 220
Houston, TX 77057

Willie E. Gary, Esq.
Sekou Gary, Esq.
Gary, Williams, Finney, Lewis, Watson & Sperando, PL
Waterside Professional Building
221 East Oceola Street
Stuart, FL 34994

*Attorneys for Plaintiff, Monica P. Ways*

                                                s/ Fred Pressley
                                                One of the Attorneys for Defendant
                                                Miami University

1641657v.v1