# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Monica P. Ways | : | Case No. 1:12-cv-00450-WOB |
| Plaintiff, | : | |
| | : | REPLY BRIEF IN SUPPORT OF |
| vs | : | DEFENDANT MIAMI UNIVERSITY'S |
| | : | MOTION FOR SUMMARY |
| Miami University | : | JUDGMENT |
| Defendant. | : | |

## I.  INTRODUCTION

The pleading rules require a party identify the causes of action it is seeking relief in its complaint. Plaintiff Monica Ways ("Ways") abandoned all claims she pleaded in her Complaint [Memo. in Opp. p. 2.[1]], and now tries to defeat Defendant Miami University's ("Miami" or the "University") Motion for Summary Judgment by asserting a new claim for hostile work environment based on race. Ways cannot use her new-claim strategy to avoid summary judgment and, even if she could, Federal Rule of Civil Procedure 56 requires her come forward with affirmative evidence supporting her claim and establishing the existence of a genuine issue of material fact to defeat Miami's properly supported Motion for Summary Judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 274 (1986). Ways has not. Quite the contrary, Ways' proffered evidence is nothing more than heavily manipulated "me too" testimony and excludable "expert" theory that only underscores the creative liberties Ways took in presenting her "evidence." Given Ways' failure to put forth sufficient evidence to establish a triable issue of fact, summary judgment in Miami's favor is warranted.

---
[1] Plaintiff's Response in Opposition [ECF #67] to Defendant's Motion for Summary Judgment [ECF #64] is referred to as "Opposition Brief" and cited as "Memo. in Opp.".

## II. LAW AND ARGUMENT

**A. Plaintiff Abandoned All Claims Pleaded in Her Complaint, and Her Attempt to Bring a New Claim for Hostile Work Environment Based on Race Should be Disregarded.**

In her Opposition Brief, Ways expressly abandons the remaining claims in her Complaint, namely that she was discriminated or retaliated against by Miami because of her gender and race.[2] [Memo. in Opp. p. 2.] Since Ways has abandoned all claims pleaded in her Complaint, specifically Count I (retaliation), Count 2 (disparate treatment), and Count 3 (disparate impact), summary judgment in Defendant's favor is warranted.[3] [ECF #1.]

Nevertheless, Ways tries to keep her case alive by limiting her abandonment to "any and all claims that are *not* 'hostile working environment' claims." [Memo. in Opp. p. 2 (emphasis supplied).] This is a problem for Ways because she never pleaded a "hostile working environment" claim in her Complaint. [ECF #1.] In arguing she can assert a new claim, Ways asks this Court to hold her single use of the phrase "hostile work environment" in the "General Fact" section of her Complaint sufficient to meet the pleading standards enunciated by the United States Supreme Court in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Such a holding would be contrary to binding case law. As Miami explained in its Motion to Dismiss [ECF ##3 and 7], Ways' Complaint failed to meet the pleading standards for the three causes of action Ways *expressly laid out* as Counts 1, 2, and 3. She certainly failed to plead her new phantom hostile work environment claim in that Complaint in line with the

---

[2] In her Opposition Brief, Ways provided: "Plaintiff hereby abandons any and all claims that are not 'hostile working environment' claims." [Memo. in Opp. p. 2.]

[3] *See* Defendant's Motion for Summary Judgment fn. 1, noting that Ways abandoned Count III earlier in the case. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim).

*Twombly/Iqbal* requirements, and her reliance on Federal Rule of Evidence 8(a) and pre-*Twombly/Iqbal* case law is of no avail.[4] [ECF #1; Memo. in Opp. p. 3.] In fact, "[t]he notice-pleading requirement 'is more demanding at the summary judgment stage than at earlier stages of the litigation, because by this point a plaintiff has had the opportunity to conduct discovery and to amend the complaint to reflect new theories.'" *Hoff-Pierre v. Univ. Hosp., Inc.*, 523 Fed. Appx. 313, 314 (6th Cir. Ohio 2013) (refusing to allow a plaintiff to add a new claim at the summary judgment stage to defeat summary judgment that was not specifically pleaded in the complaint or amended complaint) (citing *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. Appx 659, 665 (6th Cir. 2012); *Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 788 (6th Cir. 2005); *Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009) (at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint). Ways tried to amend her Complaint earlier in the case, but even then she did not seek to add a hostile work environment claim, and the Court denied that request as "futile".[5] [ECF ## 38 and 48.]

Ways cites to only one statement in her Complaint she claims sets forth her hostile work environment claim, "[t]he forced participation through the grievance process, as well as damage to the Plaintiff throughout and following created an intimidating offensive, hostile working

---

[4] Ways relies on *Memphis American Postal, AFL-CIO v. Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) and *Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir. 1988) to argue that the lower notice-pleading standard applies and that Ways' Complaint "need not set down in detail all the particularities of a plaintiff's claim against a defendant." These cases, however, preceded the heightened pleading requirements set forth in *Twombly/Iqbal* and are inapplicable here.

[5] Ways' Motion to Amend her Complaint sought to add Section 1983, 1985, and 1986 claims and new defendants. [ECF #38.] Miami noted in its Motion for Summary Judgment that Ways was precluded from asserting a new claim for hostile work environment. In her Opposition Brief, Ways did not cite any case law contrary Miami's and the authority of *Hoff-Pierre v. Univ. Hosp., Inc.*, 523 Fed. Appx. at 314; *Desparois*, 455 F. Appx at 665 *Tucker*, 407 F.3d at 788; *Carter*, 561 F.3d at 568; and *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) (stating that even under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the defendant fair notice of the claim and its supporting facts") are authoritative and controlling on this issue.

environment. . . ." [Memo. in Opp. p. 4; ECF #1, ¶28.] The problem: Ways' new hostile work environment claim has nothing to do with her alleged "forced participation through the grievance process"—and rightfully so, since Ways *voluntarily* instituted the grievance process making the allegation in the Complaint patently false.[6] [Ways Dep. pp. 110-111, 209.] In fact, Ways grounds her hostile work environment on two events: (1) that she was "subjected to . . . an improperly conducted 'ethics point' investigation that improperly and indefensibly found that she had violated University policy, and [that she was] (2) prohibited from attending a professional function wherein the defendant received a national award for an accomplishment Plaintiff was almost solely responsible for achieving." [Memo. in Opp. p. 2.] Ways cannot bootstrap her new hostile work environment claim to a single, untrue statement in her Complaint that is distinct from the two incidents that form the basis of her new claim. [Ways Dep. pp. 110-111, 209, 251-254.]

Ways goes further and asks this Court to excuse her pleading deficiencies by pointing to her 2011 administrative charges. [Memo. in Opp. pp. 2-3.] Yet, Ways does not cite a single case that supports her argument that an administrative charge, which was not filed with the Complaint, can meet the *Twombly/Iqbal* pleading requirements. [Memo. in Opp. pp. 2-3; Deft. Ex. Q, ECF #64-18.] Accordingly, Ways' administrative filings offer no viable excuse around her pleading deficiencies.

Simply put, Ways has not met the pleadings standards to plead a claim for hostile work environment based on race. As this Court recently noted, a "hostile work environment plaintiff needs to allege sufficient specificity as to the time, place, and context of alleged discriminatory statements to create a genuine issue of material fact." *Powell-Picket v. AK Steel Corp.*, 904 F. Supp. 2d 767 (S.D. Ohio 2012) (Bertelsman, J.) (citation omitted). Ways' Complaint did not

---
[6] Ways Dep. pp. 251-254.

come close to meeting the Court's directive, the *Twombly/Iqbal* pleading standards, or the pleading requirements of Federal Rule of Civil Procedure 15. Binding case law is clear, Ways cannot defeat summary judgment by asserting a claim she did not properly plead, and the Court can refuse to consider it. *Tucker*, 407 F.3d at 787-88; *Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1017 (S.D. Ohio 2007); *LeFever v. Ferguson*, 2013 U.S. Dist. LEXIS 95448, at *16 (S.D. Ohio July 9, 2013).

The Court should refuse to acknowledge Ways' new claim and should not allow it to defeat Miami's properly-supported dispositive motion.

**B.  Plaintiff Has Not Proven She Was Subjected to a Hostile Work Environment Because of Her Race.**

Even if Ways had properly pleaded a hostile work environment claim, she has not met her burden "to present affirmative evidence to defeat a properly supported motion for summary judgment" *Street v. JC Bradford and Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) and designate specific facts in dispute, and her claim fails as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404-405 (6th Cir. 1992).

Ways newly-attempted hostile work environment claim is limited to her belief that she was subjected to an EthicsPoint investigation that found she violated University policy and was prohibited from attending a professional function where Miami received an award[7] [Memo. in

---

[7] The professional award function was not held until March 12, 2012. It is outside the scope of Ways' administrative charges filed in February through July 2011, and this incident is not properly before this Court due to Ways' failure to exhaust administrative remedies. As such, it cannot form any part of Ways' hostile work environment claim. Even if it could, Ways failed to offer any proof that Miami engaged in conduct that prohibited her from attending the function; that she "was almost solely responsible for achieving," as she claimed; or that she was harmed by this in any way. Ways also offered no proof Dr. Jones had anything to do with this incident. Miami's evidence on this point remains unrefuted. Miami selected Dr. Ronald B. Scott, the Associate Vice President for Institutional Diversity at Miami University, to accept the award for the 2012 President's Community Service Honor Roll in the Special Focus Area of Early Childhood Education on Miami's behalf because he had gone before, was in Los Angeles already for another event, and it was part of his job duties. Miami did nothing to

Opp. p. 2.] Ways further limits her claim to her race and to the actions of Dr. Jones as she asserts, "she was subjected to a hostile work environment, based on her race, during the tenure of, and because of the misconduct of, former Vice President [Dr.] [Barbara] Jones." [Memo. in Opp. p. 2.]

Ways acknowledges that to succeed on a hostile work environment claim, she must prove: (1) she is an African-American; (2) she was subjected to unwelcome harassment, based on race; (3) the conduct created a hostile work environment; and, (4) there is a basis to impose liability on Miami. [Memo. in Opp. p. 4 (citing *Warf v. US Dept. of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir 2013).] Ways argues the only elements at issue are the second and third. [Memo. in Opp. pp. 4-10.] Ways is wrong. With the exception of the first element, *all* elements are at issue; so is Ways' pretext burden, which Ways completely ignored in her Opposition Brief. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (holding the *McDonnell Douglas* burden shifting analysis applies to hostile work environment cases).

1. **Ways' Own Testimony Fails To Meet Her Burden of Proof on Her Hostile Work Environment Claim.**

Miami's evidence is undisputed. [ECF #64-1, pp. 24-26.] Ways' race had nothing to do with the University's decision to investigate the numerous EthicsPoint complaints into Ways' hiring practices, or with the neutral three-person grievance committee's determination that Ways did in fact violate Miami's hiring practices. [ECF #64-1, "Statement of Undisputed Facts" pp. 2-14.]

---

prohibit Ways from also attending, if she wanted to. Miami was selected for this award in the area of early Childhood Education—not in Ways' area of community service. In fact, two *different* universities were given awards for their work in community service. Thus, there is no evidence the award was based primarily on Ways' work. [ECF #64-24, Deft. Ex. W - Declaration of Ronald B. Scott ¶¶ 2-3.]

Ways put forth no evidence proving otherwise, nor has she put forth any evidence she was subjected to a hostile work environment for any reason, or that Dr. Jones is responsible. [ECF #67.] This evidence includes Ways' own testimony, which is largely speculation and conjecture and riddled with phrases like "I felt like" and "I think." [Memo. in Opp.; Ways Dep. pp. 107-108, 294-295, 355.] In fact, Ways' own testimony fails to show her workplace was so "permeated with discriminatory intimidation, ridicule, and insult" it rose to the level of "sufficiently severe or pervasive" and altered her working environment, which she is required to do. [Memo. in Opp. p. 10; ECF #64-2, pp. 22-26.] *Waltherr-Willard v. Mariemont City School.*, 2014 U.S. LEXIS 11883, at *28 (S.D. Ohio Jan. 30, 2014) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L. Ed 2d 295 (1993)).

Ways' deposition testimony contains no support for her new hostile work environment claim that Dr. Jones subjected her to a hostile work environment because of her race by subjecting her to an EthicsPoint investigation and for prohibiting her from attending a professional event. [ECF #64-1, pp. 22-26; Ways Dep. pp. 109, 349-352 – Ways testified President Hodge, not Dr. Jones, made the decision who would accept Miami's award.] Even if it did, these events viewed in isolation or collectively are insufficient to create a hostile work environment as defined by Title VII.

**2.    Plaintiff Cannot Meet Her Burden of Proof with "Me Too" Evidence.**

Since Ways cannot prove her hostile work environment claim with her own testimony, she turns to the "me too" testimony of Dr. Susan Mosley-Howard, April Robles and Linda Dixon, all minorities who claim they too were treated improperly by Dr. Jones because of their race. [Memo. in Opp. pp. 6-8.]

7

"Me too" evidence, which is defined as claims by a plaintiff's co-workers that they too were discriminated against, is heavily disfavored. *Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (noting that "me too" evidence is unwelcome because it is at best only slightly relevant and is always highly prejudicial to the defendant); *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 734 (S.D. Ohio 2011) (finding plaintiff's evidence of alleged discrimination against two co-workers inadmissible and insufficient to create a genuine issue of material fact on summary judgment).

Ways relies too heavily on *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468-69 (6th Cir. 2009) for her position that her "me too" evidence should be considered sufficient to make her case because *Betts* is procedurally and factually distinguishable. [Memo. in Opp. p. 5.] First, *Betts* was not a summary judgment case; it was a Rule 50 (judgment as a matter of law) case. *Betts,* 558 F.3d 461. Second, the testimony was not "me too" evidence; the testimony at issue in *Betts* was all plaintiffs' testimony. *Id.* at 468. Lastly, the testimony in *Betts* proved the supervisor at issue made racially insensitive remarks, which included telling one employee she was "so black and ugly he would never have her work up front," and engaged in numerous specific acts where he treated black employees as second class citizens. *Id.*

Unlike *Betts*, none of the witness testimony Ways relies on is from co-plaintiffs, nor does it describe a situation comparable to *Betts*. Rather, Ways' "me too" evidence is so truncated that, when reviewed in context, it does not prove that any of the "me too" witnesses themselves were subjected to a hostile work environment because of their race and, more important, it clearly does not prove Ways was subject to a hostile work environment because of her race.

### i. Dr. Mosely-Howard's Testimony Does Not Establish that Plaintiff Was Subjected to a Hostile Work Environment Because of Her Race.

Ways offers the testimony of Dr. Mosley-Howard who claims Dr. Jones had a "racial attitude" and denied basic courtesies of a professional environment to "women of color"—though Dr. Mosley-Howard was unable to specify what she meant by these statements. [Memo. in Opp. p. 6.]

Ways ignores most of Dr. Mosley-Howard's testimony, and for good reason. It highlights that Dr. Mosley-Howard's complaints against Dr. Jones do not constitute harassment in the Title VII context. For example, Dr. Mosely-Howard charged Dr. Jones with race-related harassment because Dr. Jones changed a meeting time; did not apologize when Dr. Mosley-Howard believed she should; determined Dr. Mosley-Howard was not needed in a meeting; and walked into Dr. Mosley-Howard's office and came into (what Dr. Mosley-Howard considered) her personal space, just to name a few.[8] [Mosley-Howard Dep. pp. 67, 81-82, 128, Exs. A-C.[9]]

Dr. Mosley-Howard tried desperately to tie her issues with Dr. Jones to her race, but her own testimony refuted that claim.[10] In fact, Dr. Mosley-Howard testified she felt she and Dr. Jones had "good connected conversation" and "communications;" that she saw effort from Dr. Jones in trying to include her in meetings, asking for her opinion, acknowledging her; and noted that they spent time every week working on having a better working relationship. [Mosley-Howard Dep. pp. 85-86, 91-93, 120, Ex. B.] As such, Dr. Mosley-Howard's testimony does not

---

[8] Dr. Mosley-Howard could testify to only one statement she believed Dr. Jones made that had any racial connotation: Dr. Jones introduced Dr. Mosley-Howard as "her" or "my" Vice President or Dean of Students. [Memo. in Opp. p. 6.] To Dr. Mosley-Howard, this single introduction, supports her belief that Dr. Jones "talked about black people she supervised as if they were 'possessions'" [Memo. in Opp. p. 6.] Dr. Jones, however, admitted she has heard the possessive-pronoun introductory phraseology used often and she attributes no racial significance to it. [Mosley-Howard Dep. pp. 105-106.]

[9] Ways filed Dr. Susan Mosley-Howard's unsigned deposition [ECF #69], but failed to attach the exhibits. The deposition of Dr. Susan Mosely-Howard taken January 22, 2014 with Exhibits A-C was filed as ECF #71.

[10] See ECF #71, Exhibits A-C.

show race played any role in any of the trivial harms she claims she suffered, and notwithstanding her description that Dr. Jones' conduct was "overtly racial" and "just as racist as the N word," it simply was not. [Memo. in Opp. p. 7; Mosley-Howard Dep. pp. 70, 85, 100-101.]

Even more detrimental to her claim, Ways did not offer a single sentence from Dr. Mosely-Howard's deposition proving Dr. Mosley-Howard witnessed or had any personal knowledge that Ways was subjected to a hostile work environment because of her race. [Memo. in Opp. pp. 6-7; Mosley-Howard Dep. pp. 138-139.] Consequently, Dr. Mosley-Howard's speculative, "me too" testimony is not helpful to Ways' hostile work environment claim.

### ii. April Robles Does Not Have Any Evidence Plaintiff Was Subjected to a Hostile Work Environment Because of Her Race.

Ways' parsing of April Robles' testimony is even more ineffective. Robles had no evidence to support her theory that Dr. Jones was the source of her issues at Miami or that her issues were race based. [Robles Dep. pp. 27-28, 30-34, 68-69.] Robles' chief complaint was that she was transferred out of her position as Director for the Cliff Alexander Office of Fraternity and Sorority Life to Assistant Director of Career Services. [Memo. Dep. p. 7.] Robles tried to blame her move on Dr. Jones and her race, but ultimately admitted she had no evidence to support her theory. [Robles Dep. pp. 59-60.]

Robles conceded the University's decision to move her[11] was in direct response to a series of highly-embarrassing, nationally-publicized events involving the fraternities and sororities she was solely responsible for overseeing.[12] [Robles Dep. pp. 11-12, 19-22, 60-64 –

---

[11] The position Robles received in Career Services was more beneficial to her career and she did not suffer a pay deduction. [Robles Dep. pp. 11-12, 19-22.]

[12] Robles testified that a series of events at Miami fraternities/sororities made national news. These incidents included members of fraternities/sororities damaging private property, urinating in sinks, engaging in sexual

admitting she was ultimately responsible for the fraternities and sororities and could not think anyone else should have shouldered the blame for the incidents, including her boss, because "it was either [her] or no one else."] Ways ignores this testimony, and tries to chalk the incidents up to fraternities doing what fraternities do. [Memo. in Opp. p. 7.] Ways' boys-will-be-boys attitude trivializes the situation. Robles testified she could not recall any similar incidents involving fraternities and sororities that were as bad as these, that garnered so much public attention, or that "severed a lot of [the University's] community type of relationships." [Robles Dep. pp. 61-64.] After recognizing the gravity of the offenses, Robles acknowledged she had no real quarrel with Dr. Jones or the University, and admitted she was "grateful" she even had a job with Miami after the public fiascos. [Robles Dep. p. 64.]

Robles' testimony does not support Ways' hostile work environment claim and does not raise a triable issue of fact. Robles concluded her testimony by admitting she had no personal knowledge or evidentiary support for Ways' claim that she was treated differently because of her race. [Robles Dep. pp. 73-74.]

### iii. Linda Dixon Does Not Have Any Evidence Plaintiff Was Subjected to a Hostile Work Environment Because of Her Race.

Ways also relies on Linda Dixon's testimony for support, though it is unclear why. Dixon admitted she never witnessed Ways suffered any discrimination while employed at Miami and has no independent knowledge of discrimination against Ways. [Dixon Dep. p. 58-64.][13]

---

intercourse in public, stealing alcohol, leaving puddles of urine on the floor at The Freedom Center Museum and urinating on one of the exhibits there, harassing and threatening a bus driver, among others. [Robles Dep. pp. 60-64.]

[13] As for Dixon's own allegations of race discrimination by Dr. Jones, Dixon made clear that her blame was with a situation involving athletics, not anything Dr. Jones had any control over and, in the end, she got the exact relief she requested. [Dixon Dep. pp. 46-60.]

### 3. Gary Hunter is Not an Expert and His Testimony Should be Disregarded.

Ways also offers the testimony of her expert witness, Gary Hunter, to support her claims.[14] [Memo. in Opp. pp. 8-9.] Ways offers Hunter's testimony on various factual and legal issues, but his testimony confirms his fundamental misunderstanding of the facts and law, and proves he is not qualified to testify on the issues for which he has been proffered. More problematic, Hunter has a significant bias that, when coupled with his misunderstandings and willingness to opine on virtually any issue, makes him an unreliable, irrelevant witness who does not pass muster under the rubric of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. 238 (1999).

### i. Hunter's Testimony is Based on His Fundamental Misunderstanding of the Facts and is Unreliable.

Since his 2001 retirement, Hunter has had no role in the University's Department of Affirmative Action and Human Resource Development; he has been teaching Black Studies on a part-time basis. [Hunter Dep. pp. 81-83.] While Hunter claims to have "particular experience" in the area of Miami's written rules and regulations, he has no relevant experience because he has had no material involvement with Miami's rules and regulations in over thirteen years. Indeed, Hunter testified that: (1) he never worked with Ways—he retired five years before Ways was hired; (2) many of the policies and procedures at issue in this case, including the University's complaint mechanism, EthicsPoint, the People Admin. User Manual, and many others were not part of University protocol when he was employed full-time; (3) he has no working familiarity with many of the University's current policies and procedures at issue; and,

---

[14] Ways filed Gary Hunter's unsigned deposition [ECF #69], but failed to attach the exhibits. The deposition of Gary Hunter taken December 19, 2013 with Exhibits A-L was filed as ECF #72.

(4) the Department of Community Engagement and Service, where Ways is employed, did not exist when Hunter was employed at Miami. [Hunter Dep. pp 81, 90-93, 116, 127.][15]

Hunter's fundamental misunderstanding of the facts shown in Hunter's testimony, which was riddled with unsupported, conclusory and confused statements about relatively straightforward issues.

For example, Ways offers Hunter's testimony for the position that Dr. Jones "improperly initiated an EthicsPoint investigation." [Memo. in Opp. p. 9.] Miami's evidence on this point is irrefutable: the decision to investigate the numerous EthicsPoint complaints about Ways was made by Robin Parker, *not* Dr. Jones. [ECF #64-1, pp. 4-5.]

Next, Ways offers Hunter's testimony for the position that the investigation was "abnormally handled" from the beginning, was "frivolous," was "not done honestly," was intended to "nail" Ways, and that it arrived at an "erroneous" conclusion. [Memo. in Opp. p. 9.] Hunter had no support for his conclusions and provided nothing but confusing testimony on the issue. Specifically, Hunter testified he believed the Miami University Policy and Information Manual ("MUPIM") 13.2 was used by the University,[16] specifically by Dr. Jones, to "nail" Ways, *i.e.,* discriminate against Ways and subject her to a hostile work environment. [Memo. in

---

[15] When asked what he knew about EthicsPoint, Hunter answered: "only what I've read on site, on its site, that an individual can file a complaint anonymously through Ethics Point for any ethical or anything that might violate the law or University procedures." [Hunter Dep. p. 127.] He has performed no studies nor has he reviewed any studies on EthicsPoint. [Hunter Dep. pp. 128, 132.] In coming to his "expert" testimony, Hunter testified he did not do any independent interviews or research. He merely read some items Ways' counsel provided him though admittedly, he only "scanned some of the stuff" and "looked at [Ways'] deposition." [Hunter Dep. pp. 193-194.]

[16] Hunter's view of the importance of MUPIM 13.2 and the investigator's charge is contrary to the undisputed evidence. The focus of the investigation was never MUPIM 13.2. Kerri Dabbs was charged to answer two questions: (1) "Did [Ways] violate [U]niversity policy or procedure during the hiring process of the Assistance Director of Community Engagement and Service?" (2) "Did [Ways] violate [U]niversity policy or procedure during the hiring process of the Community Partnerships Coordinator?" As such, Dabbs' charge, and the scope of the investigation, was to determine if there had been any policy, which would have included MUPIM (though not necessarily or specifically MUPIM 13.2) and others, or procedure violations, which included People Admin., the Department of Student Affairs Hiring Manual, among others. [Dabbs Dep. pp. 8-9, 12-13, 34, 40; Hauser Dep. pp. 69-70.]

Opp. p. 9.] Hunter also believed Parker should have charged the Office of Equity and Equal Opportunity ("OEEO"), not the Human Resources Department, with investigating the matter.[17] Hunter claims MUPIM 13.2 and the HR Department were somehow used together to "nail" Ways, although why and how this had anything to do with Ways' race was not addressed in his testimony.

Hunter's unsupported testimony cannot refute Miami's undisputed evidence. The numerous anonymous complaints against Ways were handled by Miami like all other complaints, and the investigator's determination that Ways violated Miami's hiring policy was upheld by a neutral three-person grievance panel, which Ways and Hunter helped select. [ECF #64-1, pp. 4-6, 10-11.]

Hunter's next fundamental misunderstanding: He took issue with Parker's decision to investigate the matter because he believes it had "already been resolved once before [Dr.] Jones[18] ordered it re-started." [Memo. in Opp. p. 9.] When pressed, Hunter could not explain why Parker would choose to investigate a matter she had already resolved. [Hunter Dep. pp. 128-129, 150-156, 160-170.] As Parker explained, she has not previously decided anything about investing the merits of the complaints. She had simply provided a required response to the electronic complaint. [ECF #64-10, Deft's Exhibit I ¶8.] Nothing about Parker's response prohibited her from further investigating the matter, and Hunter's opinion to the contrary is of no probative value.

---

[17] Parker testified it is her job to review EthicsPoint complaints and determine what to do with them, including determining which department will conduct an investigation. [Parker Dep. pp. 10-12, 14-15.] Hunter offered no explanation why his opinion as to which department should have investigated the EthicsPoint complaints is worth greater credence than Parker's, especially in light of his admitted inexperience with EthicsPoint or directing University complaints. [Hunter Dep. pp. 127-129, 151-157, 162-168; Ways Dep. pp. 16-17.]

[18] *See supra*. Dr. Jones did not have anything to do with the decision to start an investigation into the numerous EthicsPoint complaints. [ECF #64-1, pp. 4-5.]

Hunter is far too removed and unfamiliar with applicable University policies and procedures; he is confused on many of the underlying facts of this case; and he has no reservations in testifying about matters well beyond the scope of his knowledge. These significant deficiencies mean Hunter's testimony is not helpful to Ways' case, and it fails to create a triable issue of fact.

### ii. Hunter is Not Qualified to Testify on the Ultimate Legal Issues of This Case.

Ways also offers Hunter's testimony on the ultimate legal issues in this case. The most glaring problem with this is Hunter's considerable lack of relevant qualifications. In fact, armed with *some* knowledge of human resources and equal employment opportunity, Hunter had no reservations about reaching broad sweeping legal conclusions on the ultimate issues in this case: "[T]he reason for this improper attempt to 'nail' Ms. Ways was racial. . . . [A] hostile work environment based on race existed during the relevant time that, at least in part, [Dr.] Barbara Jones was responsible for the improper treatment of Plaintiff; and that [Ways] was negatively impacted by all the above." [Memo. in Opp. p. 9.]

Hunter is not qualified to provide expert testimony on legal topics. His education is in Black Studies; his professional background until 2001 was in human resources with a focus on affirmative action; and he has no legal background, training or formal education.[19] [Hunter Dep. pp. 64-72; Hunter Dep. Ex. H.] During Hunter's deposition, it became clear Hunter's testimony is not supported by his actual knowledge, and Ways' counsel was forced to intercede and limit Hunter's testimony: "**He's not an attorney. He's not a legal expert**. . . . He is called, however, as an expert on the MUPIM, . . . on what goes on at Miami University. **That's language he's**

---

[19] Hunter has never published a single article on Title VII, testified in any relevant expert capacity, drafted an expert report prior to this case, or conducted studies, surveys, or an investigation to support his legal conclusions. [Report; Hunter Dep. pp. 65-68, 146; Hunter Dep. Ex. H – Expert Report.]

15

**using. It's not meant to parrot Title VII**." [Hunter Dep. p. 183 (emphasis supplied).] Despite the concession and testimonial limitation, Ways offers Hunter as a legal expert on the issue of whether she was subjected to a hostile work environment. [Memo. in Opp. p. 9.]

Even if Hunter were qualified to testify, it is well-settled in the Sixth Circuit that an expert *cannot* opine on a legal issue. *DeMerrell v. City of Cheboygan*, 206 Fed.Appx. 418, 426 (6th Cir. 2006) (proper for district court to ignore expert opinion that merely expresses legal conclusions) (emphasis supplied); *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994). Nor can an expert reach legal conclusions and engage in the weighing of evidence to offer personal opinions, which is exactly what Ways tries to do with Hunter's offered testimony. *See In re Commercial Money Ctr., Inc.*, 737 F. Supp.2d 815, 839-844 (N.D. Ohio 2010).

Many courts, including this one, have rejected the same kinds of conclusory legal testimony Ways seeks to introduce. In *Blessing v. Ohio Univ.*, 2011 U.S. Dist. LEXIS 140182, at *53-*54 (S.D. Ohio Dec. 6, 2011), the expert's report was filled with similar conclusory statements, such as the plaintiff "was subjected to a hostile and chilly climate in Ohio University's History Department on the basis of her gender," and "[a]s a result, . . . was treated differently and less favorably than her male colleagues." This Court held that the "[l]egal conclusions [were] not a sufficient evidentiary basis to create a genuine issue of material fact," and deemed the testimony inadmissible. *Id.*

Ways offers Hunter's testimony for his broad, sweeping legal conclusions on the central issue of this case—conclusions this Court alone has the authority to make—and without any regard or understanding of the law regarding hostile work environment claims. [Hunter Depp. pp. 207-210.] *Torres v. City of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985) ("The best resolution of this type of problem is to determine whether the terms used by the witness have a separate,

distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate. . . ." (citations omitted)). *Barber v. Louisville and Jefferson County*, 2007 U.S. Dist. LEXIS 3153, at *8-*9 (W.D. Ky. Jan. 12, 2007) (excluding expert testimony because the language used by the expert had specialized meaning in the law and related to and used the wording of the legal issues before the Court). Given Hunter's lack of employment law training, experience or comprehension, Hunter is not qualified to give expert testimony or the legal conclusions in his report and his testimony do not create a triable issue of fact.

### iii. Hunter Has an Unresolvable Conflict of Interest that Precludes Him from Testifying as an Expert.

Finally, Hunter has an unresolvable bias that makes his testimony unreliable and excludable. [*See e.g.*, Hunter Dep. pp. 13-14, 25, 103, 129-130.] Hunter advocated for Ways on the same exact issues for which he now offers *expert* testimony, and helped Ways with her discrimination charge against Defendant. [Hunter Dep. pp. 110-111, 140-141.] Despite Hunter's advocacy, the grievance committee found Ways in violation of University policy, and the administrative agency issued a "No Probable Cause" determination in response to Ways' charge. [Ways Dep. Exs. 4, 5.] Since Hunter has been unsuccessful as an advocate, Ways now tries to force Hunter's arguments on this Court under the guise of expert testimony. Even if Hunter was qualified to testify, his testimony is unreliable due to this unresolvable conflict of interest. "Where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Conde v. Velsicol Chem. Corp.*, 804 F. Supp. 972, 984 (S.D. Ohio 1992) (citation omitted); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277 (S.D. Ohio 1988).

Hunter's contributions are not neutral and they are not expert. They are argumentative, unsupported claims of an advocate. Hunter's unresolvable bias and penchant for confused

testimony and using legal terms he does not understand makes Hunter's testimony insufficient to create a genuine issue of material fact and it should be excluded.

4. **Plaintiff Did Not Put Forth Any Evidence to Meet Her Pretext Burden.**

The University met its burden and came forward with legitimate, non-discriminatory responses to all the allegations Ways lodged against it. [ECF #64-1, pp. 27-28.] Ways, on the other hand, failed to come forth with an argument, let alone evidence that anything the University did was a pretext for illegal conduct. Having fully ignored her pretext burden, even if Ways had proven her hostile work environment claim up to this point, her case fails at this stage. *Clay*, 501 F.3d at 706.

5. **Plaintiff's Collective Evidence is Insufficient to Defeat Defendant's Well-Supported Motion for Summary Judgment.**

Ways failed to put forth sufficient evidence of a triable issue of material fact on the three contested elements of her claim. She also failed to put forth any evidence to prove her pretext burden. At a minimum, Ways' evidence amounts to irrelevant "me too" or inadmissible "expert" testimony. At most, it underscores the weakness of Ways' case, the disingenuous nature of Ways' tactics, and does not meet her burdens of proof.

The Court is not obligated "to comb the record to find evidence or testimony establishing a party's case." *Nerswick v. CSX Transp., Inc.*, 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010) (Weber, J.). *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Baker v. Pfeifer*, 940 F. Supp. 1168, 1183 n. 20 (S.D. Ohio 1996) (Dlott, J.). Nor is the Court required to accept Ways' manipulated, inaccurate version of the evidence. At this stage, Ways must put forth evidence on all critical issues for which she would have the burden at trial. *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995). She has not, she cannot, and summary judgment in Defendant's favor is warranted.

### III. CONCLUSION

Plaintiff abandoned all claims she pleaded in her Complaint, and her attempt to assert a new claim to defeat summary judgment fails. Even if Plaintiff could assert a new claim at this late stage, Defendant's evidence remains sufficient and undisputed. Plaintiff's evidence, on the other hand, is insufficient to meet the requisite burden of proof requirements to defeat summary judgment. Defendant requests that summary judgment on all of Ways' claims, including her new hostile work environment claim, be granted in its favor and that Plaintiff's lawsuit be dismissed with prejudice.

    Respectfully Submitted,

    MICHAEL DeWINE
    ATTORNEY GENERAL OF OHIO

    By:   /s/ Sara H. Jodka
    Fred Pressley (0023090)
    Sara H. Jodka (0076289)
    Lisa G. Whittaker (0082142)
    Porter, Wright, Morris & Arthur, LLP
    41 South High Street – Suite 3100
    Columbus, OH 43215
    (614) 227-2060
    (614) 227-2100 (Fax)
    Email: fpressley@porterwright.com
           sjodka@porterwright.com
           lwhittaker@porterwright.com

    *Special Counsel Appointed By Ohio Attorney General, Mike DeWine*

    *On Behalf of Defendant Miami University*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of April, 2014, I filed a true copy of the foregoing electronically through the Court ECF system. A copy is available to all registered users, including:

    JAMES E. KOLENICH (0077084)
    9435 Waterstone Blvd. #140
    Cincinnati, OH 45069
    (513) 444-2150
    (513) 297-6065 (fax)
    Email: jek318@gmail.com

    WILLIE E. GARY
    GARY, WILLIAMS, PARENTI, WATSON & GARY, PL
    Waterside Professional Building
    221 East Oceola Street
    Stuart, Florida 34994
    Ph: (800) 329-4279 Fax: (772) 220-3343
    Email: dpk@williegary.com
    (Admitted Pro Hac Vice)

    JAMES LEONARD BROWN (CA Bar No. 40702)
    5900 Wilshire Blvd., Ste. 2645
    Los Angeles, CA 90036
    Ph: (213) 251-2332 Fax: (213) 607-1456
    Email: jameslbrownlaw@yahoo.com
    (Admitted Pro Hac Vice)

*Attorneys for Plaintiff Monica Ways*

                /s/ Sara H. Jodka
                *Special Counsel Appointed By Ohio Attorney*
                *General, Mike DeWine*

                *On Behalf of Defendant Miami University*