```
             UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
                   WESTERN DIVISION


        CIVIL ACTION NO. 1:12cv450 (WOB)
```

**MONICA P. WAYS**                                         **PLAINTIFF**

VS.              **MEMORANDUM OPINION AND ORDER**

**MIAMI UNIVERSITY**                                       **DEFENDANT**

This matter is before the Court on the Defendant's motion for summary judgment (Doc. 64).

The Court held oral argument on this motion on Tuesday, June 10, 2014. James Kolenich and Willie Gary were present for the Plaintiff. Fred Pressley and Sara Jodka were present for the Defendant. Plaintiff also attended. Official Court Reporter Jodi Perkins recorded the proceedings. Thereafter, the Court issued an Order directing the parties to file any supplemental authority relevant to the matter (Doc. 77).

Having conducted oral argument and reviewed the parties' briefs and supplemental authority, the Court issues the following Memorandum Opinion and Order.

### I. Facts

#### A. Ways' Employment With Miami

Plaintiff Monica Ways ("Ways") was hired by Defendant Miami University ("Miami") in July 2006 as its Director of Community Engagement and Service. Doc. 58, Pl. Depo, p. 12-13. In this role,

1

Ways facilitates curricular and co-curricular services for students. *Id*. at 81-82. Ways was reappointed to the position every year through the present; she also received a salary increase every academic year, with the exceptions of 2009-2010 and 2010-2011, when Miami implemented a pay freeze. *Id.* at 127, 131, 137-142, 148.

### B. EthicsPoint Complaints About Ways

Between March 25, 2010 and June 7, 2010, Miami received three anonymous calls about Ways to its complaint hotline service, EthicsPoint. *Id*. at 87; Doc. 58-14, Dabbs' Report, pp. 7-14. EthicsPoint is an online reporting system that allows persons to report suspected violations of law, ethics or Miami policy via the internet or telephone. Doc. 64-10, Parker Aff., ¶¶3-5.

At the time these complaints were filed, Ways was in the process of hiring an Assistant Director and a Coordinator in her department. Doc. 58-14, Dabbs' Report. All three EthicsPoint complaints alleged Ways violated Miami rules and practices in seeking to hire Hailee Gibbons as Assistant Director, and one complaint also alleged Ways violated Miami rules and practices in seeking to hire William Clark as Coordinator. Doc. 58, Ways Depo., pp. 85-87, 124-126, 194-195; Doc. 58-14, Dabbs' Report, pp. 7-14.

### C. Miami's Investigation of the EthicsPoint Complaints

Robin Parker, General Counsel for Miami, and Barb Jena, Director of Internal Audit and Consulting Services for Miami, review all EthicsPoint reports and determine what actions should be taken to handle each report. Doc. 60, Parker Depo., p. 17; Doc. 64-10, Parker

2

Aff., ¶¶4-6. Miami routinely investigates allegations regarding employees, including allegations of hiring infractions. *Id.* at ¶9.

Parker reviewed all three EthicsPoint complaints filed against Ways, made the required follow-up responses to the anonymous reporter's file, reviewed relevant information, spoke to relevant individuals, and determined that the Human Resources Department was best equipped to investigate. Doc. 60, Parker Depo., p. 19-20, 27; Doc. 64-10, Parker Aff., ¶7.

Kerri Dabbs, Senior Human Resources Generalist for Miami, investigated the EthicsPoint complaints about Ways. Doc. 59, Dabbs Depo., pp. 10-11. Dabbs then issued a report in which she determined Ways committed four violations of Miami's hiring policies and procedures in hiring Gibbons and Clark. 58-14, Dabbs' Report, pp. 2-6. Dabbs did not recommend any action or discipline be taken against Ways. *Id.*

### D. Overpayment of Wages

In May 2010, Ways inquired about taking extended leave and was informed that she had a negative sick leave balance, which, once exhausted, would require her to use FMLA unpaid leave. Doc. 64-12, Hauser Aff., ¶¶5, 7, Ex. 2; Doc. 64-13, Hauser/Ways Correspondence. After Ways exhausted her paid sick leave, she requested an extension of sick leave pursuant to MUPIM Section 4.5C, which allows a staff member to be retained on the payroll for an additional period of time with appropriate approval. *Id.*

3

Ways was required to submit documentation in a timely manner in order to be considered for an extension of leave, but failed to do so. Doc. 64-12, Hauser/Ways Correspondence; Doc. 64-22, Stoss Aff., ¶4. The medical documentation Ways provided for one day of leave per week was insufficient. Doc. 64-12, Hauser/Ways Correspondence, ¶¶5, 7, Ex. 2. Ways was thus not approved for extended sick leave. *Id*.

However, Miami mistakenly paid Ways for time off during this period. Doc. 58, Ways Depo., p. 97. In September 2010, Miami informed Ways that, pursuant to its policies, she was required to repay her negative leave balance as she was paid for time she had not worked. *Id*. at 96-97; Doc. 64-12, Hauser Aff., ¶7. Although Ways requested she be permitted to work off her negative leave balance, Miami policy does not permit unclassified staff to do so. Doc. 64-12, Hauser Aff., ¶8; Doc. 64-22, Stoss Aff., ¶5.

### E. Ways' Internal Complaint Regarding Dr. Jones

On October 1, 2010, Plaintiff filed an internal complaint alleging Dr. Jones, Miami's past Vice-President of Student Affairs, and others discriminated and retaliated against her on the basis of race and gender. Doc. 64-14, Ways' Internal Complaint. Miami engaged an outside investigator, Wanda Carter, to investigate Ways' complaints. Doc. 64-15, Carter Report. Carter reviewed the relevant documentation and interviewed Ways, Dr. Jones, Dabbs and others. *Id*.

Carter issued a report on December 8, 2010 and concluded that no one at Miami had taken any actions to harass, undermine or

4

discriminate against Ways due to race or gender. Doc. 64-15, Carter Report.

**F. Ways' Grievance**

Separately, Ways filed a grievance challenging the findings in Dabbs' Report. Doc. 58, Ways Depo., 251-254. On January 6, 2011, a three-person panel conducted a half-day grievance hearing, where Ways and Miami presented evidence and questioned witnesses. *Id*. at 256, 258-261. The panel issued its decision on January 24, 2011, finding that Ways was not in violation of MUPIM Section 13 Unclassified Administrative Staff 13.2.B-3 or 13.2.B-8 during the hiring process of the Assistant Director position, nor was she in violation of MUPIM Section 13 Unclassified Administrative Staff 13.2.B-3 during the hiring process of the Coordinator position. Doc. 64-16, Grievance Decision, p. 1. Ways was, however, found to be in violation of MUPIM Section 13 Unclassified Administrative Staff 13.2.B-8 during the hiring process of the Coordinator position. *Id*. The panel required Ways to participate in the "Manager Refresher Training for People Admin," but no discipline was placed in Ways' file. *Id*.; Doc. 64-5, Hauser Depo., p. 40-41; 65-66; Doc. 64-21, Parker Aff., ¶5.

**G. Ways' First Administrative Charge**

On February 24, 2011, Ways filed an administrative charge with the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC") claiming she was disciplined and employed in a hostile working environment due to race and gender. Doc. 64-18, OCRC/EEOC filing.

5

### G. Gibbons' Grievance and Ways' Involvement

On March 18, 2011, Gibbons filed an internal complaint. Gibbons claimed she was retaliated against for participating in Ways' grievance hearing as a witness when her one-year interim appointment ended and the master's degree requirement was put back into the required qualifications for her position, rendering her ineligible for the job. Doc. 64-26, Gibbons' Grievance.

President Hodge's assistant sent an email to Ways and others informing them that Dr. Walter was handing Gibbons' complaint. Doc. 64-19, Mason/Gibbons Correspondence. Despite this, on March 21, 2011, Ways responded to Gibbons directly by email, copying several Miami officials, as follows:

> Despite my inquiries, Dr. Walter and Dr. Jones have not communicated to me any good and valid nondiscriminatory reason for their actions with regard to you as a potential applicant for the Assistant Director of Community Engagement and Service. I acknowledge that you participated in a protected act under University policy and shortly thereafter Dr. Walter communicated his firm intent to alter the minimum requirement for the position you currently hold on an "interim" basis – this, despite your explicit continued interest in continuing your employment at Miami in the position. [. . .] Based on the above, I recommend that the minimum requirements for this position be returned to a Bachelor's degree with appropriate and relevant experience. If that is not acceptable by the senior administration, I recommend that advertising of this position be held in abeyance until your grievance is fully heard under the full complement of procedures available to you, as an Administrative Staff member, as stated in MUPIM 13.6.

Doc. 64-10, pp. 99-100; Parker Aff., ¶11, Ex. 6.

6

On March 22, 2011, President Hodge responded to Ways' email, noting that he was "deeply disappointed" by her "complete disregard for and violation of" the instructions he gave for responding to Gibbons' grievance. Doc. 64-10, pp. 100; Parker Aff., ¶11, Ex. 6.[1] He informed Ways that her disregard for his instructions would be added to her personnel file as documentation of unacceptable behavior. *Id.*

### H. Ways' Second Administrative Charge

On June 2, 2011, Ways filed a second charge of discrimination with the OCRC alleging President Hodge's March 22, 2011 email was retaliatory. Doc. 58-6, Second Charge. After its investigation into both of Plaintiff's administrative charges, the OCRC issued a "no probable cause determination," which was adopted by the EEOC. Doc. 64-18, OCRC/EEOC Filings.

### H. Procedural History

Ways' complaint in this Court, filed on June 12, 2012, expressly alleges three claims: retaliation, disparate treatment, and disparate impact. Doc. 1, Complaint.

On August 13, 2012, Miami filed a motion to dismiss. Doc. 2, Mot. to Dismiss. The Court granted the motion to dismiss as to claims under 42 U.S.C. §1981 but denied the motion as to all remaining claims. Doc. 13, Minute Order. The Court noted in its order that Ways had withdrawn her disparate impact claim. *Id.*

---

[1] Under Miami policy, unclassified staff are expected to comply with Miami rules and procedures and "directives as promulgated by the President." Doc. 64-12, Hauser Aff, ¶6, Ex. 3.

7

On June 3, 2013, Ways filed a motion for leave to file an amended complaint. Doc. 38, Pl. Mot. for Leave. Ways did not seek to include a hostile work environment claim in the amended complaint. *Id*. The Court denied the motion because the proposed amendments would be futile, were barred by Sixth Circuit precedent and the statute of limitations, and did not relate back. Doc. 48, Order.

On February 28, 2014, Miami filed its motion for summary judgment. Doc. 64, Def. Motion for Summary Judgment. In her response brief, Ways abandoned both her disparate treatment and retaliation claims. Doc. 67, p. 2. However, Ways argued that she did not concede her "hostile working environment claims." *Id*.

## II. Analysis

**A. Failure to Plead a Hostile Work Environment Claim**

Ways' eleventh-hour attempt to include a new hostile work environment cause of action is not well-taken. Ways' complaint expressly laid out three causes of action under section IV, titled "CAUSES OF ACTION," with the following subtitles: "Count 1- Retaliation," "Count 2 – Disparate Treatment," and "Count 3 – Disparate Impact."[2] *Id*. A hostile work environment claim is not among those listed.[3]

---

[2] As noted *supra*, Plaintiff expressly abandoned her disparate impact claim earlier in the litigation. *See* Doc. 13, Minute Order.

[3] While Plaintiff does not address whether her "hostile working environment" claim is on the basis of race, sex, or both, the arguments presented in her response brief clearly limit this to a race-based hostile work environment allegation. *See* Doc. 67, Pl. Response Brief, p. 4.

Ways argues that despite not listing "hostile work environment" as a cause of action under section IV of her complaint, she sufficiently pled the claim in her "General Fact" section of the complaint. She argues paragraphs 22, 23, and 24 allege conduct of Dr. Jones that establishes a hostile work environment, and paragraph 28 explicitly mentions a "hostile working environment."

Paragraph 28 states:

> The forced participation in the grievance process, as well as the damage to the Plaintiff throughout and following created an intimidating, offensive, hostile working environment. Defendant has an affirmative obligation to assure that its use of institutional procedures is applied without prejudice and without creating an intimidating, offensive, hostile working environment. It has an affirmative obligation to fairly and impartially weigh the facts of a situation before implementing its university procedures that, by the test of a reasonable person, can cause emotional distress and harm to the reputation of an employee.

*Id*. at ¶28. Plaintiff also contends that her administrative charge alleged a hostile work environment. These two factors, she argues, are sufficient to meet the liberal pleading standard of Federal Rule of Civil Procedure 8(a) despite her not expressly alleging a hostile work environment cause of action in her complaint.

The Court rejects Ways' arguments. "The notice-pleading requirement is more demanding at the summary judgment stage than at earlier stages of the ligation, because by this point a plaintiff has had the opportunity to conduct discovery and to amend the complaint to reflect new theories." *Hoff-Pierre v. Univ. Hosp., Inc.*, 523 Fed. App'x 313, 314 (6th Cir. 2013) (*citing Desparois v. Perrysburg*

*Exempted Vill. Sch. Dist.,* 455 F. App'x 659, 665 (6th Cir. 2012)). To permit Plaintiff to assert a new claim at this late hour would subject the Defendant to unfair surprise. *Tucker v. Union of Needletrades, Industrial and Textile Employees,* 407 F.3d 784, 788 (6th Cir. 2005) (*citing Guiffre v. Local Lodge No. 1124,* No. 90-3540, 1991 WL 135576, *5 (6th Cir. 1991)).

Ways' passing reference to a "hostile working environment," particularly considering the late stage of this litigation and her failure to attempt to amend her complaint to include a hostile work environment claim, is insufficient to meet the requirements of Federal Rule of Civil Procedure 8(a). Having conceded all claims, summary judgment is therefore appropriate for Miami.

### B. No Evidence of a Racially Hostile Work Environment

Assuming *arguendo* that Ways sufficiently pled a hostile work environment claim, she nonetheless failed to produce sufficient evidence of a race-based hostile work environment to withstand summary judgment.

To prove a hostile work environment claim based on race, Ways must establish: (1) she is African American; (2) she was subjected to unwelcome harassment based on race; (3) the conduct had the effect of unreasonably interfering with her work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there is a basis to impose liability on Miami. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (*citing Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)).

10

A hostile work environment occurs when an individual's workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (*citing Barrett v. Whirlpool Corp*., 556 F.3d 502, 514 (6th Cir. 2009)). Courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (*citing Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000)).

A "hostile work environment plaintiff needs to allege sufficient specificity as to the time, place, and context of alleged discriminatory statements to create a genuine issue of material fact." *Powell–Pickett v. AK Steel Corp.,* 904 F.Supp.2d 767, 776 (S.D. Ohio 2012), *aff'd,* 549 Fed. App'x 347 (6th Cir. 2013) (employee's bald assertion that her supervisor frequently made racially derogatory remarks lacked specificity required to establish a racially hostile work environment, where employee did not allege that supervisor discriminated against employee because of her race, rather than her having been a replacement worker hired during lockout of union worker) (citation omitted)).

Ways' hostile work environment claim is based upon the following allegations: (1) being subjected to an improperly conducted EthicsPoint investigation that found she violated Miami policy, (2) being prohibited from attending a professional function to receive an

award when colleague Ron Scott, Vice President of Diversity, was sent instead, and (3) being subjected to "misconduct" by Dr. Jones, Miami's past Vice-President of Student Affairs.  However, there is no evidence that these incidents occurred because of Ways' race.  In addition, the allegations about the awards banquet and Dr. Jones lack specificity and fail to rise to the level of severity and pervasiveness required of a hostile work environment claim.

As to the EthicsPoint investigation, Ways offers no evidence that race motivated or affected the investigation process in any way. Miami offered testimony that it reviews all EthicsPoint complaints and routinely investigates the underlying allegations.  *See* Doc. 60, Parker Depo., p. 17; Doc. 64-10, Parker Aff., ¶¶4-6, 9.  Ways was not disciplined as a result of Miami's investigation, and she was afforded the right to challenge the investigatory findings before a neutral panel.  Doc. 64-10, Parker Aff., ¶9.  Ways exercised this right by filing a grievance; after a hearing on the matter before a neutral panel, the panel found Ways violated Miami policy in part.  Doc. 64-16, Grievance Decision, p. 1.  There is no evidence that race was a factor in this process.

There is also no evidence that Miami's decision to send Ron Scott to an awards banquet rather than Ways was a decision based on race. Initially, Ways did not point to any record evidence regarding Scott's race.  Ways' allegation that Dr. Jones should have suggested President Hodge select Ways to attend the award ceremony is undermined by her admission that the decision of who to send to the ceremony was made by

President Hodge alone. Doc. 58, Ways Depo., pp. 352-353. Ways' claim is also undermined by her allegation that she "pissed off" President Hodge and his decision not to send her to the award ceremony was retaliation. *Id*. Thus, there is no evidence this was a racially-motivated decision, and the incident also lacks the severity and pervasiveness indicative of a hostile work environment. *See Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 901 (S.D. Ohio 2010) ("personal conflict does not equate with discriminatory animus"); *Scott v. Central School Supply, Inc.*, 913 F. Supp. 522, 529 (E.D. Ky. 1996) (comments made in the course of conflicts were "sex neutral" and thus did not amount to a hostile work environment).

Ways argues a hostile work environment was created because she knew that other African-American women were "laboring under this hostile environment" created by Dr. Jones. Doc. 67, Pl. Response Brief, p. 10. This evidence is not specific enough to withstand summary judgment. Ways does not allege that any racially-derogatory comments were made by Dr. Jones, nor does she identify any specific instances of Dr. Jones' mistreating her due to race. Ways has not identified any case law to support her argument that other employees' allegations about Dr. Jones give rise to a viable hostile work environment claim.

For these reasons, even if Ways had sufficiently pled a hostile work environment claim, which she did not, she has not adduced sufficient evidence to raise a triable issue of fact.

Therefore, the Court having heard oral argument, and the Court being sufficiently advised,

**IT IS ORDERED:**

(1) Defendant's motion for summary judgment (Doc. 64) be, and hereby is, **GRANTED;** and

(2) A separate judgment dismissing the Complaint shall enter concurrently herewith.

This 3rd day of July, 2014.



Signed By:
*William O. Bertelsman* WOB
United States District Judge